## AFFIDAVIT OF SPECIAL AGENT PATRICK J. BRIODY

I, Patrick J. Briody, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the ATF, and have been since 2010. I am currently assigned to the ATF's Bridgewater, Massachusetts Field Office. During my law enforcement career, I have participated in many investigations involving firearm and drug trafficking, criminal possession and use of firearms, and the use of firearms in relation to violent and drug trafficking crimes. My investigations have included the use of various investigative techniques and the execution of various search, seizure, and arrest warrants including of residences and obtaining cellular telephone data that has assisted in prosecuting offenders.

2. As an ATF Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of federal firearms laws in Title 18 of the United States Code. During my law enforcement career, I have received specialized training regarding the activities of firearms traffickers and other criminal firearm activity, including the methods used to manufacture, transport, and deal in firearms. I am also an ATF Interstate Nexus Expert and am qualified to make interstate nexus determinations on firearms and ammunition.

3. I am also authorized to investigate violations of federal narcotics laws in Title 21 of the United States Code. During my law enforcement career, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities.

4. I have participated in various aspects of drug and firearm related investigations. I have participated in controlled purchases of controlled substances utilizing confidential informants

1

and undercover law enforcement agents and officers. I have prepared affidavits for federal court in support of applications for criminal complaints, search warrants, and tracking warrants. I have also conducted and coordinated electronic and physical surveillance of individuals involved in the illegal distribution of controlled substances.

5. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, statewide, national, and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking. I am also familiar with the manner in which drug traffickers use telephones, coded or slang-filled conversations, text messages, pager messages, and other means to facilitate their illegal activities and prevent detention.

## PURPOSE OF AFFIDAVIT

6. I am submitting this affidavit in support of a criminal complaint charging Nipuktuk JOSEPH (DOB: xx/xx/2000), Roy WILLIS (DOB: xx/xx/2000), Rebecca GLASS (DOB: xx/xx/1999), and Darren BENEVIDES (DOB: xx/xx/1991), with conspiracy to distribute and to possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

7. As explained more fully below, between November 25, 2019 and June 17, 2020, an undercover officer ("UC-1") purchased fentanyl directly from or at the direction of JOSEPH, WILLIS, GLASS, or BENEVIDES. Additionally, on December 30, 2019, WILLIS sold another undercover officer ("UC-2") a Glock-type, Polymer 80, .22 caliber LR semi-automatic pistol with no serial number (the "GLOCK-TYPE FIREARM"), 49 rounds of .22 caliber ammunition, and approximately 3 grams of suspected crack cocaine.

8. As a result, I submit there is probable cause that JOSEPH, WILLIS, GLASS, and BENEVIDES conspired to distribute fentanyl, in violation of 21 U.S.C. § 846 and 841(a)(1).

9. Since November 2019, I have personally participated in this investigation and am familiar with the relevant facts and circumstances based upon: (a) my personal knowledge; (b) my review of records related to this investigation; (c) information provided to me by other law enforcement officers and agents; and (d) my experience and training as a criminal investigator.

10. Because this affidavit is submitted for the limited purpose of establishing probable cause that JOSEPH, WILLIS, GLASS and BENEVIDES conspired to distribute and possess with intent to distribute controlled substances, I have not included each and every fact known to me or other law enforcement officers involved in this investigation. Rather, I have included only those facts that I believe are sufficient to establish probable cause for the issuance of a criminal complaint.

## BACKGROUND OF THE INVESTIGATION

11. Since November 2019, the ATF – Bridgewater Field Office has been investigating JOSEPH and his distribution of controlled substances in the Plymouth, Massachusetts area. Prior to November 18, 2019, an ATF confidential informant ("CI-1")[1] provided information that JOSEPH was dealing narcotics in the Plymouth area.

12. From November 25, 2019 to June 17, 2020, UC-1 conducted five controlled purchases of narcotics from JOSEPH and/or others. Prior to each controlled purchase (except the first purchase which was arranged by CI-1), UC-1 called JOSEPH at cellular phone number 774-

---

[1] CI-1 has a history of motor vehicle violations, receiving stolen property, giving a false address to police, failure to return leased property, threats and drug arrests and convictions. CI-1 received consideration in pending state criminal violations. In January 2020, the ATF terminated its relationship with the CI-1 for reasons unrelated to truthfulness or reliability. Agents have corroborated information received from CI-1 as detailed below, all controlled purchases were witnessed by law enforcement, and I believe that the information received from CI-1 is reliable.

419-6011 ("JOSEPH's Phone"), and ordered various quantities of heroin and/or fentanyl. All of the controlled purchases were audio and/or video recorded. After each of the phone calls setting up the controlled purchases, JOSEPH, WILLIS, GLASS, BENEVIDES, or (on one occasion) an unknown male ("UM-1") met with UC-1 to deliver the narcotics.

## PROBABLE CAUSE

November 25, 2019: Controlled purchase of fentanyl from JOSEPH delivered by WILLIS

13. On November 25, 2019, UC-1 conducted a controlled purchase of $300 worth of fentanyl from JOSEPH and WILLIS. Prior to the deal, CI-1 placed a call to 617-817-0562, a phone number that CI-1 attributed to Roy WILLIS. Using that number, CI-1 spoke with a male whom CI-1 recognized to be JOSEPH and placed an order for $300 worth of fentanyl.[2] Agents then provided UC-1 with $300 in agency funds. As directed by JOSEPH via telephone, UC-1 and CI-1 travelled to the area of Seaview Road in Plymouth, MA. Law enforcement then observed WILLIS arrive on foot and get into UC-1's vehicle. Law enforcement learned that WILLIS was involved with JOSEPH from CI-1 and UC-1 identified him via a driver's license image. UC-1 then exchanged a quantity of agency funds for a quantity of fentanyl with WILLIS. UC-1 then travelled to a predetermined meet location and provided me with the recovered suspected fentanyl. Subsequent Drug Enforcement Administration ("DEA") laboratory testing confirmed the suspected narcotics JOSEPH and WILLIS sold to UC-1 on November 25th, contained the presence of fentanyl and heroin, with a total weight of 9.8 grams.

December 18, 2019: Controlled purchase of fentanyl from JOSEPH

14. On December 18, 2019, UC-1 placed a recorded phone call to JOSEPH's Phone and arranged to purchase a quantity of fentanyl from JOSEPH.[3] As directed by JOSEPH, UC-1

---

[2] CI-1 personally knows WILLIS and JOSEPH, and knows that WILLIS associates with JOSEPH.

[3] Law enforcement received the number for JOSEPH's Phone from CI-1.

travelled to a Walmart store located at 300 Colony Place, in a Plymouth shopping center. Investigators then observed JOSEPH arrive and enter the Walmart. Investigators recognized JOSEPH from previously viewing his driver's license photo as well as photographs available on social media. JOSEPH then called UC-1 and advised him that he had seen two "Feds" walking out of the Walmart. JOSEPH instructed UC-1 to meet him in a parking lot near 110 Colony Place, which was within the same shopping center. At that location, law enforcement observed JOSEPH exit the rear seat of a vehicle occupied by at least two other individuals and enter the front passenger seat of UC-1's vehicle. UC-1 purchased a quantity of fentanyl from JOSEPH using $800 of agency funds. JOSEPH then advised UC-1 to contact him to obtain more fentanyl in the future. UC-1 then travelled to a predetermined meet location and provided me with the suspected fentanyl. Subsequent DEA laboratory testing confirmed the suspected narcotics JOSEPH sold to UC-1 on December 18th, contained the presence of fentanyl and heroin, with a total weight of 20 grams.

December 30, 2019: Controlled purchase of a firearm, ammunition, and suspected crack cocaine from WILLIS

15. On December 30, 2019, UC-2 and CI-1 contacted WILLIS via telephone and arranged to purchase the GLOCK-TYPE FIREARM and ammunition from WILLIS. UC-2 and CI-1 were directed to travel to a residence located at 21 Park Road in Plymouth. Upon arrival, CI-1 exited the UC vehicle and met WILLIS at the rear door of the residence. WILLIS then approached the UC vehicle and entered the front passenger seat. Once inside, WILLIS removed the GLOCK-TYPE FIREARM from his right pants pocket and then removed a bag containing 49 rounds of ammunition and an empty ammunition magazine from his left pants pocket. WILLIS then exchanged the firearm, ammunition, and magazine for $1,000. Before concluding the

purchase, WILLIS informed UC-2 that the firearm was a "ghost gun" and had no serial numbers.[4] WILLIS further stated that his "man" custom built the ghost gun, and that WILLIS had additional firearms in his possession. Subsequent to selling UC-2 the ghost gun and ammunition, WILLIS stated he was in possession of an "eight-ball"[5] of "hard"[6] he would be willing to sell to UC-2 for $240. WILLIS then exited the UC vehicle, entered 21 Park Road, and exited a short time later. Once back in the UC vehicle, WILLIS handed UC-2 a plastic baggy containing a hard rock like substance consistent with crack cocaine in exchange for $240. WILLIS then exited the vehicle and UC-2 travelled to a predetermined meet location and provided me with the recovered firearm, magazine, ammunition, and suspected crack cocaine.

16. I have inspected the GLOCK-TYPE FIREARM and ammunition WILLIS sold to UC-2 on December 30, 2020, and determined that the firearm is a "firearm" as defined in Title 18, United States Code, Chapter 44, Section 921(a)(3), and the ammunition is "ammunition" as defined in Title 18, United States Code, Chapter 44, Section 921(a)(17)(A), and that the ammunition was not manufactured in Massachusetts. Thus, the ammunition traveled in interstate and/or foreign commerce.

February 11, 2020: Controlled purchase of fentanyl from JOSEPH delivered by GLASS

17. On February 11, 2020, UC-1 placed recorded calls and/or texts to JOSEPH's Phone and arranged to purchase more fentanyl from JOSEPH. At the direction of JOSEPH, UC-1 travelled to PinzBowl located at 101 Kingston Collection Way, in Kingston, MA. At about the

---

[4] Subsequently, I inspected the GLOCK-TYPE FIREARM, WILLIS sold to UC-2 on December 30, 2019, and determined it to be to be a Privately Made Firearm, also known as a "ghost gun" – a firearm that has been manufactured by an individual and not by a firearms manufacturing company.

[5] Based on my training an experience, I know that an "eight ball" is street vernacular commonly used to describe an eighth of an ounce.

[6] Based on my training an experience, I know that "hard" is street vernacular commonly used to describe crack cocaine.

same time, investigators observed a gray Nissan Versa being driven by a white female arrive at 15 Wood Street, in Plymouth, MA. A registry check of this vehicle showed it was registered to REBECCA GLASS ("GLASS") of Carver, MA. Investigators then observed JOSEPH exit 15 Wood Street, Plymouth, MA and get into the rear passenger seat of the gray Nissan. A short time later, investigators observed this same vehicle arrive at the PinzBowl parking lot and park within view of UC-1's vehicle. GLASS then exited the gray Nissan, got into the passenger seat of the UC vehicle, and identified herself as "Becca" to UC-1.[7] UC-1 then received a call from JOSEPH from JOSEPH's Phone confirming that "his girl" found UC-1's vehicle. UC-1 then exchanged $800 in agency funds for a quantity of fentanyl with GLASS while on the phone with and at the direction of JOSEPH. While GLASS was in the car with UC-1, investigators observed an individual inside the gray Nissan who appeared to be talking on a cellular phone. After the transaction, GLASS returned to the gray Nissan and drove out of the parking lot. UC-1 subsequently provided me with the suspected fentanyl. Subsequent DEA laboratory testing confirmed the suspected narcotics JOSEPH and GLASS sold to UC-1 on February 11th, contained the presence of fentanyl, with a total weight of 17.9 grams.

18. Immediately following the controlled purchase, law enforcement maintained surveillance on the gray Nissan as it drove from the transaction, and stop a short time later at a fast food restaurant in Plymouth, MA. Investigators, who were familiar with JOSEPH's appearance from RMV and criminal records, as well as the December 18th controlled buy, identified JOSEPH as he exited the vehicle's back seat and entered the restaurant.

June 8, 2020: Controlled purchase of suspected fentanyl from JOSEPH and UM-1

19. On June 8, 2020, UC-1 placed a series of recorded calls and text messages to

---

[7] UC-1 and other investigators identified GLASS by reviewing her driver's license photo as well as photos identifying her on social media.

JOSEPH's Phone and arranged to purchase a quantity of fentanyl from JOSEPH. At the direction of JOSEPH, UC-1 travelled to 27 Knight's Point Road in Plymouth. During the text conversation, UC-1 wrote, "You going to be there who am I looking for????" JOSEPH replied "Lmk when u here". When UC-1 texted JOSEPH that UC-1 had arrived, JOSEPH replied, "Go buy [sic] the Honda." UC-1 observed a silver Honda Accord with California license plate 7BOE625 parked near 27 Knight's Point Road next to a motor scooter. A records check showed the Honda was registered to Darren BENEVIDES with an address in Simi Valley, California. UC-1 then observed approximately seven males exit 27 Knight's Point Road including BENEVIDES.[8] BENEVIDES approached UC-1's vehicle and advised UC-1 where to park. Next, an unidentified male party ("UM-1") got into the passenger seat of UC-1's vehicle, and UC-1 exchanged recorded agency funds for a quantity of suspected fentanyl with UM-1. UC-1 then left and travelled to a predetermined meet location and provided me with the suspected fentanyl. Subsequent DEA laboratory testing confirmed the suspected narcotics JOSEPH and UM-1 sold to UC-1 on June 8th, contained the presence of fentanyl, with a total weight of 9.7 grams.

June 17, 2020: Controlled purchase of suspected fentanyl from JOSEPH and BENEVIDES

20. On June 17, 2020, UC-1 placed a series of recorded calls and text messages to JOSEPH's Phone and arranged to purchase a quantity of fentanyl from JOSEPH. At the direction of JOSEPH, UC-1 travelled to a preservation area parking lot on Black Cat Road, which is across the street from 170 Black Cat Road. JOSEPH, using JOSEPH's Phone, informed UC-1 that "my man" on a scooter would meet him. After UC-1 advised JOSEPH that UC-1 had arrived via text, JOSEPH told UC-1 to call phone number 805-328-9044. JOSEPH then texted UC-1 that "I don't sell no more. He go Meet u". UC-1 then called 805-328-9044, and spoke to a male party who advised he would meet UC-1 at a parking area off Black Cat Road. Investigators who were

---

[8] UC-1 subsequently identified BENEVIDES based on his driver's license photo.

familiar with BENEVIDES' appearance from RMV and criminal records, as well as the June 8th controlled purchase, observed BENEVIDES exit 27 Knight's Point Road, get onto a motor scooter, and travel down Knight's Point Road towards Black Cat Road.  A short time later, BENEVIDES arrived at the parking lot and spoke to UC-1 through the driver's window of UC-1's vehicle.  Upon arrival, UC-1 asked BENEVIDES if he was "Nip's boy" and BENEVIDES replied in the affirmative.  UC-1 then exchanged a quantity of recorded agency funds for a quantity of suspected fentanyl with BENEVIDES.  BENEVIDES then informed UC-1 that he just "pulled up the other day".  BENEVIDES instructed UC-1 to call BENEVIDES at the "805" number if UC-1 cannot get ahold of JOSEPH.[9]  UC-1 then travelled to a predetermined meet location, and provided me with the suspected fentanyl.  Subsequent DEA laboratory testing confirmed the suspected narcotics JOSEPH and BENEVIDES sold to UC-1 on June 18th, contained the presence of fentanyl, with a total weight of 9 grams.

---

[9] Based on commercial database record checks, phone number 805-328-9044 is or has previously been registered to Darren BENEVIDES at the same address in Simi Valley, California.

**CONCLUSION**

21.     Based upon the foregoing, as well as my training and experience, I submit that there is probable cause that beginning no later than November 25, 2019 continuing until at least to June 17, 2020, Nipuktuk JOSEPH conspired at different times with Roy WILLIS, Rebecca GLASS, and Darren BENEVIDES to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Accordingly, I respectfully request this Court issue a criminal complaint charging Nipuktuk JOSEPH, Roy WILLIS, Rebecca GLASS, and Darren BENEVIDES with violations of 21 U.S.C. §§ 846 and 841(a)(1).

> */s/ Patrick J. Briody*
> Patrick J. Briody
> Special Agent
> Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to me by telephonic attestation, this __'th day of September, 2020.     Sep 2, 2020

_____
HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS